**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DANIEL L. TAPPEN,**

      **Petitioner,**

**vs.**                                    **Case No. 4:13cv345-RH/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Daniel L. Tappen, represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, on June 10, 2013. ECF No. 1.  On November 19, 2013, Respondent filed an answer, with exhibits. ECF No. 8. Petitioner filed a reply on March 6, 2014.  ECF No. 18.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration

---

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.  Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief, and the § 2254 petition should be denied.

## **Procedural Background**

By grand jury indictment filed on November 24, 2008, in the Second

Judicial Circuit, Leon County, in case number 08CF4096A, the State of

Florida charged Petitioner Daniel L. Tappen with one count of first degree

murder, a capital felony, in violation of section 782.04(1)(a)1., Florida

Statutes, in connection with the death of his wife, Kimberly Tappen, on

September 28, 2008.  ECF No. 8 Ex. C at 12-13.[2]  Petitioner Tappen was

arrested and incarcerated.  On June 2, 2009, Tappen, through counsel,

filed a Stipulated Motion for Authorization to Transport Defendant, which

provided:

> *Comes now*, the Defendant, and moves this Honorable
> Court to authorize the transportation of the Defendant to the

---

[2]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits
submitted with Respondent's answer, ECF No. 8.

Defendant's home for purposes of trial preparation, and in support of same would show as follows:

## I.

The Defendant is currently in custody with no bond.  The Defendant's case is about to be set for trial and it is necessary for the Defendant to assist Counsel in preparation.

In order for the Defendant to adequately assist Counsel in preparation for the presentation for his case, it would be of substantial assistance if the Defendant could walk through his home with Counsel to completely explain where all events took place on the night of his wife's passing.  Unfortunately, as the Defendant remains incarcerated, he has been unable to make any mortgage payments on his home and the mortgage holder has now initiated a foreclosure action.  It is anticipated that the Defendant (and his family) will loose [sic] access to the home in the near future.  For this reason, the undersigned now moves this Court to authorize the Sheriff's Department to transport the Defendant to his home (while remaining in custody and under the complete supervision of the Sheriff's Department) so that he may walk through the events of September 28 and 29, 2008, with Counsel.  The undersigned and the Defendant would emphasize that this would all be done while the Defendant remained in the complete control of the Sheriff's Department. Once the Defendant was given the opportunity to explain the events of the above referenced evening, he would immediately be returned to the Leon County Jail.

## II.

Counsel for the Defendant has discussed this motion and requested relief with Assistant State Attorney Jackie Fulford. Mrs. Fulford has no objection to the Court authorizing the Leon County Sheriff's Department to transport the Defendant to his home for the reason noted above, but specifically requested

that no family members be present other than the Defendant's brother, Billy Tappen, who will be the individual that can allow access into the home.  Mrs. Fulford also specifically requested that it be noted that he is not [on] a furlough or family visit. Under the circumstances and within those parameters, Mrs. Fulford has no objection to the Court granting this motion and allowing the Defendant the relief noted above.

Ex. C at 45-46.  In an order dated June 10, 2009, the state trial court granted Tappen's motion and ordered the following:

> 1.  That the Defendant's Stipulated Motion for Authorization to Transport Defendant is granted;
>
> 2.  That the Leon County Sheriff's Department shall transport the Defendant to his home located at 2995 Verdura Point Dr., Tallahassee, Florida 32311, at a time mutually agreed upon by Defense Counsel and the Sheriff's Department;
>
> 3.  Any costs affiliated with the transportation of the Defendant to his home for purposes of trial preparation shall be borne by the Defendant;
>
> 4.  Other than the Defendant's brother, Billy Tappen, no other family members shall be present during the Defendant's presence at his home and the Defendant's brother shall remain outside the home while the Defendant is present;
>
> 5.  That at all times while the Defendant is away from the Leon County Jail he shall remain in the custody of the Leon County Sheriff's Department, restrained in a fashion consistent with prisoner transportation, and that upon completion of his visit to the home for trial preparation, he shall be returned immediately to the Leon County Jail;

6.  That at all times during the Defendant's absence from the Leon County Jail he shall remain in the custody and control of the Leon County Sheriff's Department; and

7.  That the State Attorney's Office shall be notified in advance of the date and time the Defendant will be transported to the home and when he is expected to be returned to the jail.

*Id.* at 50-51.

Tappen proceeded to a jury trial March 1 through March 9, 2010.  Ex.

G (trial transcript).  During the trial, just before the testimony of Sergeant

Paul Pruett, the following took place on the record regarding State's Exhibit

120, a video and audio recording of the walk-through of Tappen's home:

MR. MORRIS [defense counsel]: For the purposes of record, Judge, I have provided to the Court, as well as to counsel for the State, two cases that I've been able to locate while here in the courtroom and retrieve from somebody here in the courthouse.

The first of which is – would be State of Florida – or, excuse me, George Myles v. State of Florida, 602 So. 2d 1278. It's a Florida Supreme Court case from 1992.  Likewise, I have provided to the Court Robert Pearman v. State of Florida, 777 So. 2d 438.  Or, excuse me, I'm referring to the Horning-Keating case which is on the bottom right-hand side, same citation, from the Fifth District Court of Appeal.

Judge, the State intends to play a jail – or a walk-through of Mr. Tappen's house.  As Your Honor will recall, Mr. Villeneuve moved this Court for an order allowing for this [walk-through] to occur.  And it was allowed to occur; however, only under specifically tailored and structured circumstances.

More specifically, the tailored and structured circumstance was that Mr. Tappen must be under guard, which was in fact provided by the Leon County Sheriff's Office.  Mr. Tappen and Mr. Villeneuve went to the house.  The objective was for Mr. Tappen to be able to converse with his lawyer and have dialogue with his counsel, to be able to provide information in preparation for a defense.

In the process, the State of Florida surreptitiously videotaped and audiotaped the entirety of the walk-through and now seeks to introduce that into evidence.  The gist of the argument is quite simple.  That conversation was and should have been protected and should always be protected by the attorney-client privilege and should remain inviolate.

THE COURT: Okay.  Are you handling this, Mr. Prince?

MR. PRINCE: Yes, Your Honor.

THE COURT: Okay, go ahead.

MR. PRINCE: Unfortunately the case law cited by the defense isn't really on point for this issue.  This issue isn't would the communication have been privileged if Mr. Villeneuve and Mr. Tappen were together by themselves.  The issue is did they waive the privilege by communicating in front of third parties.

I think the best place to start is with Section 90.507, which deals with the waiver of a privilege by voluntary disclosure.  That section provides that "a person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy."  It then goes on from there.

There are several cases that deal with this issue.  And I think the place to start in terms of case law would be best served by addressing – or directing the Court's attention to Brookings v. State.  This is 495 So. 2d 135.  It is a Florida Supreme Court case from 1986.  And I'll provide copies of these cases both to the defense counsel and the Court when I am finished arguing.

THE COURT: Okay.

MR. PRINCE: But what this case makes clear is that any time a communication takes place between an attorney and a client and there is a nonessential third party present – and what I mean when I say "nonessential third-party client" is an attorney's assistant or something of that nature – then the client or, rather, the privilege is waived.

And there are several other cases that deal with this issue in the context of law enforcement being present, either physically or through recording when there are privileged communications taking place between a criminal defendant and some other person.

The case of Boyd v. State, this is 17 So. 3d 812.  It is a 2009 case from the Fourth District.  In this case the police actually went farther than they did here and they convinced the defendant that he was going to be able to have confidential communications with I believe in that case it was his wife.  And when the wife went into the interview room and spoke to the defendant, they were recording the conversation.

And the court ruled that they were able to use the communications against the defendant in court because he you should have expected, being in a jail setting, that he was going to be – his conversation was going to be recorded by law enforcement.

It was sort of the same situation in the Fifth District case, Johnson v. State, which is 730 So. 2d 368.  It is a 1999 case. Again in that case the defendant was voluntarily in law enforcement custody.  He was there to speak with them.  Prior to dealing with the officers, he was given a chance to speak to his wife.  Again in that case the court found that his reasonable expectation of privacy was abrogated because of the circumstances where the communication took place.

The last case that I'd like to cite or direct the Court's attention to is Proffitt v. State.  It's 315 So. 2d 461.  In that case a defendant, a murder defendant, had – robbery defendant, I forget – had communications with his wife at home in their trailer.  And the communications were overheard by a person who was renting a room in the back of their trailer.  In that case the court found that even though the door to the room where the defendant and his wife were communicating was closed, the privilege was abrogated because the defendant didn't take any special precautions to lower his voice.  He knew that there was another person in the trailer, and still chose to communicate with his wife.

And the court found that it wasn't reasonable for him to expect that there was no possibility his conversation could be overheard.

What the court should generally take from all these cases is that any time a third party is present, the client waives his privilege to confidential communications.  In this case the fact that it was recorded has nothing to do with whether the privilege was waived because the defendant knew that three or four deputies, however many, were present the entire time during the walk-through monitoring every word he said, every movement he made, everything he did.

Under the statute and the case law presented to the Court there can't be any logical basis to argue that he had a

reasonable expectation of privacy.  And on that basis, Your Honor, you should deny the motion to suppress.

THE COURT:  Okay.  And you have copies of the cases?

MR. PRINCE: Yes, Your Honor.  May I approach?

THE COURT: Yes.

MR. MORRIS: Judge, if I could briefly respond.  There are a couple of distinctions that Mr. Prince may or may not be aware of.  Of course Mr. Tappen was handcuffed to the arm of the person that was escorting him.  And I am going to submit to the Court that by virtue of that, that person became a necessary party to the communication.

Secondarily, I don't think that the Court can think that Mr. Tappen voluntarily wanted to be handcuffed during this view of his home.

And then, finally, I think that it is ridiculous to think that we're going to allow for a view of the home, but Mr. Tappen needs to remain mute during the entire view of the home and not convey anything as he sees it to his counsel.  That doesn't make sense.

MR. PRINCE: Your Honor, just very briefly to respond to that specific argument.  Nobody forced the defendant to do a walk-through in this case.  That was a matter of strategy that the defense counsel developed.  They could have taken a video of the house, they could have taken pictures of the house, and asked the defendant to discuss it in privacy.  But they didn't do that.  They chose to have communications with their client with other people present.  Maybe that wasn't a good idea, but that's what they chose to do.

And by doing that the defendant waived his privilege. And these communications are no longer privileged, no longer protected under the statute or the case law and they should be admitted.  Thank you.

(Pause.)
THE COURT: So it is an audio recording or both video and audio?

MS. WEBSTER: Both.

MR. MORRIS: Of course there was no advance warning to counsel or the defendant of that.

THE COURT: And so you-all didn't know that it was being recorded?

MR. VILLENEUVE: Absolutely not.

(Pause.)

THE COURT: All right.  I'm going to find that it was obvious that the deputies were there and therefore Mr. Tappen and his lawyer had no reasonable expectation of privacy.  And the fact that it was videotaped doesn't change that.  I mean, there were several deputies there on the scene.

I also don't think the fact that Mr. Tappen was handcuffed to a deputy changes it.  I mean, it is a Leon County Sheriff's Office, their duty and responsibility to – this is something that the State and the defense agreed to.  The Leon County Sheriff's Office did not really want to do it, but it is their responsibility to provide whatever security level they feel is necessary.  And that's what they felt was appropriate in this case.

And I doubt that you-all have ever heard of another case where someone has been let out to go back to their house.  I could be wrong.

MR. MORRIS: Ms. Ray and I have a bad habit of making case law in these areas.  No, I have never seen one.

THE COURT: I don't think there has ever been one.  So, I mean, it was a little bit of an unusual circumstance and that's probably why they did the handcuffing and everything.  So based on all that, I'm going to deny your motion to suppress the videotape.

*Id.* at 895-903.  The recording was played for the jury and transcripts were provided.  *Id.* at 909, 1006-55.

Tappen did not testify.  *Id.* at 1601.  The jury found him guilty of the lesser charge of second degree murder.  Ex. C at 205; Ex. G at 1850-51. The state trial court adjudicated him guilty and, in a judgment and sentence rendered April 26, 2010, sentenced him to 30 years in prison, with credit for 519 days time served.  Ex. C at 217-25; Ex. I-2 (sentencing transcript).

Tappen appealed his conviction and sentence to the First District Court of Appeal (DCA), assigned case number 1D10-2290.  Ex. J (Initial Brief); Ex. K (Answer Brief); Ex. L (Reply Brief).  The first point in Tappen's Initial Brief challenged the trial court's ruling allowing the State to introduce the recording of the walk-through: "The trial court erred by permitting the

State to introduce a videotape that was surreptitiously recorded by law

enforcement officials while Appellant Tappen was walking through his

residence with his lawyer 'for purposes of trial preparation.'" Ex. J at ii, 26.

In the Answer Brief, the State argued that to the extent Tappen's claim "is

one of a constitutional basis," because it "makes reference to a Florida

Constitutional provision and to a pre-AEDPA case from Wyoming involving

a federal constitutional issue and specifically references the state and

federal constitutions," it was not preserved for appellate review as Tappen

"discussed his claim at length below as one of attorney-client privilege," but

"at no point during the argument below did [Tappen] ever assert a

constitutional basis, state or federal, for his claim."  Ex. K at 21-22.  In the

Reply Brief, Tappen argued, "Contrary to the State's assertion, . . . Tappen

preserved this claim for appellate review. (T7-896) ("That conversation was

and should have been protected and should always be protected by the

attorney-client privilege and it should remain inviolate.")."  Ex. L at 1 n.1.

On November 21, 2011, the First DCA per curiam affirmed the case without

a written opinion.  Ex. M; Tappen v. State, 75 So. 3d 274 (Fla. 1st DCA

2011) (table).  The mandate issued on December 7, 2011.  Ex. N.

Tappen filed a petition for writ of certiorari in the United States Supreme Court and presented the question for review as "Whether the prosecution's interference with the Petitioner's attorney-client relationship (by surreptitiously recording an attorney-client meeting being conducted 'for purposes of trial preparation') violated the Petitioner's Sixth Amendment right to assistance of counsel."  Ex. P at i.  The State filed a brief in opposition, asserting Tappen "failed to present the issue set forth by his Petition in the Florida courts 'at the time and in the manner required by state law' and in a manner in which the state courts could adjudicate the federal constitutional claim on the merits" and further Tappen "utterly failed to demonstrate that the constitutional issue he seeks to present was properly preserved for adjudication in the Florida trial court and passed upon on the merits by the First District."  Ex. Q at 15.  In reply, Tappen argued that "he properly preserved a Sixth Amendment claim when he argued during the trial that the prosecution's actions amounted to a violation of the attorney-client privilege."  Ex. R at 2-3.  The U.S. Supreme Court denied certiorari on July 11, 2012.  Ex. S.

On August 10, 2012, Tappen, through counsel, filed a motion for reduction of sentence pursuant to Florida Rule of Criminal Procedure

3.800(c).  Ex. T.  The state trial court denied the motion on August 12, 2012.  Ex. U.

As indicated above, on June 10, 2013, Tappen, through counsel, filed a § 2254 petition in this court.  ECF No. 1.  Tappen raises one ground: "The prosecution's interference with Petitioner Tappen's attorney-client relationship (by surreptitiously recording an attorney-client meeting being conducted 'for purposes of trial preparation') violated Petitioner Tappen's Sixth Amendment right to assistance of counsel."  *Id.* at 9.  Respondent filed a response and exhibits. ECF No. 8. Tappen filed a reply. ECF No. 18.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011); Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d

1272 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt.'" Cullen, 131 S.Ct. at 1398

(quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v.

Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the

record that was before the state court that adjudicated the claim on the

merits." Cullen, 131 S.Ct. at 1388.

Petitioner Tappen argues the actions of the State prosecution

interfered with his attorney-client relationship, violating his Sixth

Amendment right to counsel.  Specifically, Tappen argues the prosecution

surreptitiously recorded an attorney-client meeting conducted "for purposes

of trial preparation."  Tappen alleges:

> Prior to the trial, Petitioner Tappen was incarcerated in the jail.
> Defense counsel therefore filed a motion to allow Petitioner
> Tappen to be transported from the jail to his residence in order
> to allow Petitioner Tappen and defense counsel to walk through
> the residence and discuss the circumstances of the incident "*for*

*purposes of trial preparation.*"  (R1-45) (emphasis added).  The motion explained that the walk-through of the residence was "necessary" for Petitioner Tappen to "adequately assist" defense counsel in the preparation of Petitioner Tappen's defense so that Petitioner Tappen could "completely explain where all events took place on the night of his wife's passing." (R.1-45).  The state trial court granted the motion, but the state trial court ordered that at all times during the walk-through, Petitioner Tappen was to "remain in the custody of the Leon County Sheriff's Department."  (R1-50).  The state trial court further stated that "[a]ny costs affiliated with the transportation of the Defendant to his home for purposes of trial preparation shall be born [sic] by the Defendant."  (R1-50).  Petitioner Tappen was subsequently transported to his residence and he engaged in a walk-through of the scene of the incident with his attorney.  During the walk-through, defense counsel asked Petitioner Tappen about what happened on the evening in question and Petitioner Tappen answered defense counsel's questions.  However, during the walk-through, Petitioner Tappen was *handcuffed* to the arm of a deputy (apparently due to the trial court's order that Petitioner Tappen remain in the custody of law enforcement officials during the walk-through). (T7-900).  Moreover, during the walk-through, law enforcement officials surreptitiously videotaped (with audio) the entire conversation between Petitioner Tappen and defense counsel (i.e., Petitioner Tappen and defense counsel were not told or informed that the walk-through would be videotaped).  (T7-901-02).  Law enforcement officials subsequently provided the videotape to the prosecution team.  During the trial, the prosecution (over objection) played the videotape for the jury and the prosecution relied on the tape in an effort to prove that Petitioner Tappen was guilty – most notably during its opening statement in arguing that Petitioner Tappen's statements to defense counsel were inconsistent with other statements that he made to law enforcement officials.  (T2-113) ("Now, this is the video I was talking about that's very important for you to compare to the prior video.").

*Id.* at 11-12 (footnotes omitted).

Respondent asserts this ground is not properly exhausted and procedurally defaulted.  ECF No. 8 at 23.  In particular, Respondent asserts that Petitioner did not present this as a federal constitutional claim to the state trial court and failed to properly preserve the Sixth Amendment argument under Florida law, having only presented the claim in the state trial court as one of attorney-client privilege.  *Id.* at 25; *see* Ex. G at 895-903, Ex. C at 207.  Respondent argues Petitioner's claim is now procedurally defaulted and Petitioner has not demonstrated cause and prejudice.  ECF No. 8 at 26.

Indeed, a review of the record reflects that, as Respondent argues, Tappen presented the claim in the state trial court only as one asserting attorney-client privilege.  As set forth in detail above, at no point in the state trial proceedings did Tappen specifically argue, as he does here, that the actions of the State prosecution interfered with his attorney-client relationship, violating his Sixth Amendment right to counsel.  At most, Tappen argued that the conversation that occurred between Tappen and his counsel during the walk-through was protected by the attorney-client privilege; however, given the cases Tappen cited to the trial court, and the

response by the prosecution referencing section 90.507 (concerning waiver

of privilege), Tappen's argument was one based on Florida state case and

statutory law, not the U.S. Constitution or Sixth Amendment, neither of

which were ever specifically mentioned or referenced by Tappen's trial

attorney.  *See* O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a

federal court may grant habeas relief to a state prisoner, the prisoner must

exhaust his remedies in state court.").  *See also, e.g.*, McNair v. Campbell,

416 F.3d 1291, 1302 (11th Cir. 2005) (explaining exhaustion requirement:

"[T]o ensure that state courts have the first opportunity to hear all claims,

federal courts have required a state prisoner to present the state courts

with the same claim he urges upon the federal courts."); Smith v. Jones,

256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to

exhaust state remedies that are no longer available, that failure is a

procedural default which will bar federal habeas relief, unless either the

cause and prejudice or the fundamental miscarriage of justice exception is

applicable."); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010)

(explaining "[a] federal court may still address the merits of a procedurally

defaulted claim if the petitioner can show cause for the default and actual

prejudice resulting from the alleged constitutional violation" or if

fundamental miscarriage of justice exists because "'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986))). Accordingly, this ground appears procedurally defaulted.

On the merits, Respondent argues Tappen waived any argument concerning attorney-client privilege by speaking openly in front of the officers.  The Eleventh Circuit has explained that "a communication is protected by the attorney-client privilege and protected from Government intrusion by the sixth amendment if it is (1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential."  <u>United States v. Bell</u>, 776 F.2d 965, 971 (11th Cir. 1986).  "A communication divulged to 'strangers' or outsiders can scarcely be considered confidential communication between attorney and client." <u>United States v. Gordon-Nikkar</u>, 518 F.2d 972, 975 (5th Cir. 1975).  "[I]t has long been held that once waived, the attorney-client privilege cannot be reasserted."  <u>United States v. Suarez</u>, 820 F.2d 1158, 1160 (11th Cir. 1987).

Indeed, the basis of the state trial court's ruling was the Florida statute providing for waiver of privilege:

> A person who has a privilege against the disclosure of a
> confidential matter or communication waives the privilege if the
> person . . . voluntarily discloses or makes the communication
> when he or she does not have a reasonable expectation of
> privacy, or consents to disclosure of, any significant part of the
> matter or communication.  This section is not applicable when
> the disclosure is itself a privileged communication.

§ 90.507, Fla. Stat. (2008); *see* § 90.502, Fla. Stat. (lawyer-client privilege).

The record supports the state court's findings that "it was obvious that the

deputies were there and therefore Mr. Tappen and his lawyer had no

reasonable expectation of privacy" and "the fact that it was videotaped

doesn't change that."  Ex. G at 902.  The recording of the walk-through was

played during the trial and it is transcribed in the record.  *Id.* at 1007-55.

Tappen was handcuffed to an officer and talked with his attorney in the

presence of that officer and other officers.  *See id.* at 906-08.  At points, it

is clear that Tappen and his attorney knew others were there and listening,

and they did not instruct the officers that the conversation was privileged or

otherwise make any effort to assert the attorney-client privilege during the

walk-through.  *Id.* at 1014, 1019, 1027.  Likewise, the defense motion

requesting the walk-through did not assert application of the attorney-client

privilege and expressly acknowledged that "[t]he undersigned and the

Defendant would emphasize that this would be done while the Defendant remained in the complete control of the Sheriff's Department."  Ex. C at 46.

In addition, Tappen has not demonstrated that the state court's decision was contrary to or an unreasonable application of federal law as interpreted by the U.S. Supreme Court.  The case Tappen relies on, Shillinger v. Haworth, 70 F.3d 1132 (10th Cir. 1995), is not a U.S. Supreme Court case and is also otherwise distinguishable.  *See, e.g.*, Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) ("Our inquiry into what is clearly established federal law for AEDPA purposes is not the case law of the lower federal courts, including this Court.").  As Respondent indicates, that case pre-dated AEDPA, which provides more deference to state court rulings.  *See* Bell v. Cone, 535 U.S. 685, 693 (2002) (explaining AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law").

Further, in Haworth, defense counsel arranged several preparatory sessions with Haworth in the trial courtroom.  70 F.3d at 1134.  Because Haworth was in custody, the sessions took place on the condition that a deputy sheriff be present; defense counsel paid the deputy and "allegedly

instructed the deputy to consider himself an employee of defense counsel

during the trial preparations sessions and that 'none of this goes out of this

room,' although the prosecutor denied that there was such an

understanding." *Id.* During the trial, it became apparent to defense

counsel that the prosecutor had learned about the trial preparation

sessions and about the substance of some of the conversations that took

place between defense counsel and Haworth during the sessions, and the

prosecutor admitted that "his knowledge of the preparatory sessions was

acquired through a conversation with the deputy that was initiated by the

prosecutor." *Id.* at 1134-35. Over defense counsel's objections, "the trial

judge ruled that although the prosecutor could not directly refer to the

preparatory sessions, he could cross-examine Haworth regarding whether

his testimony had been coached." *Id.* at 1135. The trial continued and, on

the following day, defense counsel again objected, "expressed his concern

that the attorney-client privilege had been compromised by the prosecutor's

knowledge of what went on in the preparatory sessions, and he sought to

suppress evidence of the sessions as work product." *Id.* The prosecutor

was still concerned that Haworth had been improperly coached and argued

the attorney-client privilege had been waived because of the deputy's

presence during the sessions. *Id.* The court commented the deputy's communication to the prosecutor "strikes me as being unfair" and "it strikes me as being a potential reversible error," but ruled the prosecutor "can get at it in cross examination without referring to the conversations between counsel and the Defendant." *Id.* After the jury found him guilty, Haworth appealed to the Wyoming Supreme Court, which held the prosecution and law enforcement had not infringed his right to effective assistance of counsel. *Id.* at 1136. Haworth then filed a § 2254 petition, which the federal district court granted, finding his Sixth Amendment rights had been violated. *Id.*

On appeal, the Tenth Circuit reviewed relevant Sixth Amendment standards governing intentional prosecutorial intrusions into a defendant's relationship with defense counsel, including Weatherford v. Bursey, 429 U.S. 545 (1977). Weatherford was an undercover law enforcement agent who was "arrested" and indicted with the defendant, Bursey, and asked by defense counsel to attend trial preparation sessions. *Id.* at 547. "At no time did Weatherford discuss with or pass on to his superiors or to the prosecuting attorney or any of the attorney's staff 'any details or information regarding [Bursey]'s trial plans, strategy, or anything having to do with the

criminal action against [Bursey].'"  *Id.* at 548.  Weatherford testified for the

prosecution at Bursey's trial regarding his undercover activities.  *Id.* at 549.

After Bursey was convicted, he sued Weatherford prusuant to 42 U.S.C.

§ 1983, alleging that Weatherford had communicated defense strategy and

plans to the prosecution, violating Bursey's right to effective assistance of

counsel under the Sixth and Fourteenth Amendments.  The district court

entered judgment for Weatherford and, on appeal, the Fourth Circuit

reversed, holding that "whenever the prosecution knowingly arranges or

permits intrusion into the attorney-client relationship the right to counsel is

sufficiently endangered to require reversal and a new trial." Bursey v.

Weatherford, 528 F.2d 483, 486 (4th Cir. 1975).  The U.S. Supreme Court

reversed the Fourth Circuit, holding that no Sixth Amendment violation

occurred.  Weatherford, 429 U.S. at 550.  Among other things, the Court

explained:

> That the per se rule adopted by the Court of Appeals
> would operate prophylactically and effectively is very likely true;
> but it would require the informant to refuse to participate in
> attorney-client meetings, even though invited, and thus for all
> practical purposes to unmask himself.  Our cases, however,
> have recognized the unfortunate necessity of undercover work
> and the value it often is to effective law enforcement.  We have
> also recognized the desirability and legality of continued
> secrecy even after arrest.  We have no general oversight

authority with respect to state police investigations.  We may disapprove an investigatory practice only if it violates the Constitution; and judged in this light, the Court of Appeals' per se rule cuts much too broadly. . . . [U]nless Weatherford communicated the substance of the . . . conversations and thereby created at least a realistic possibility of injury to Bursey or benefit to the State, there can be no Sixth Amendment violation . . . .

There being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment . . . .

*Id.* at 557-58.

In Haworth, the Tenth Circuit distinguished Weatherford, explaining

that "this case presents a situation unlike Weatherford in that the intrusion

here was not only intentional, but also lacked a legitimate law enforcement

purpose."  70 F.3d at 1139.  The court reviewed additional case law and

further explained:

[W]e must fashion a rule that we believe best accounts for the competing interests at stake.  In this regard, we note that – even under the prosecutor's own version of events – the instant case presents a vastly different situation than that confronting the Court in Weatherford.  This is not a case in which the state's interest in effective law enforcement is at issue.  Rather, this is a case in which the prosecutor, by his own admission, proceeded for the purpose of determining the substance of Haworth's conversations with his attorney, and attorney-client communications were actually disclosed.  This sort of purposeful intrusion on the attorney-client relationship strikes at

the center of the protections afforded by the Sixth Amendment and made applicable to the states through the Fourteenth Amendment.

. . . .

Because we believe that a prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment.  In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect of the reliability of the trial process must be presumed.  In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct.  We also note that "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." Strickland [v. Washington,] 466 U.S. [668], 692 [(1984)].

Haworth, 70 F.3d at 1142.  The court found the state court fact-finding procedures inadequate and remanded the case to the district court to determine the extent of the intrusion and the proper remedy.  Id. at 1143.

In this case, however, as explained above and unlike the situation in Haworth, Tappen and his counsel expressly acknowledged in his motion that he would remain in the custody and control of the Sheriff's Department and at no point in the motion or during the walk-through did Tappen or

counsel assert the communications were confidential or protected by the

attorney-client privilege.  Unlike the situation in Haworth, nothing indicates

the prosecution directly interfered or intentionally intruded into the attorney-

client relationship.  The state trial court, in allowing the recording as

evidence, explained the walk-through "is something the State and the

defense agreed to" and further found that "[t]he Leon County Sheriff's

Office did not really want to do it [the walk-through], but it is their

responsibility to provide whatever security level they feel is necessary" and

"that's what they felt was appropriate in this case."  Ex. G at 902.  The state

trial court implicitly, if not explicitly, found the Sheriff's Office had a

legitimate reason, security, to record the walk-through.  Further, as set forth

above, the record supports the state trial court's determination that Tappen

and his counsel had no reasonable expectation of privacy, and thus waived

any privilege associated with communications made during the walk-

through, because of the presence of several deputies.

In a case involving whether a criminal defendant waived his attorney-

client privilege regarding telephone conversations while incarcerated pre-

trial, the Eleventh Circuit explained:

The attorney-client privilege is not absolute.  Because it "serves to obscure the truth, . . . it should be construed as narrowly as is consistent with its purpose." [United States v.] Suarez, 820 F.2d [1158,] 1160 [(11th Cir. 1987)].  Thus, this court has developed a two-part analysis to determine when the attorney-client privilege protects a communication between an attorney and his client from government intrusion.  A communication between an attorney and his client will be protected if it is "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential."  United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985) . . . .

In applying the law surrounding the attorney-client privilege to the facts of this case we will first assume, for the purpose of discussion, that Noriega did sign a valid release evidencing his understanding that all of his telephone conversations, including those with members of his defense team, would be recorded.  Under such circumstances, it is conceivable that the District Court could find that Noriega's attorney-client privilege would not prohibit the government's recording of Noriega's telephone conversations with his defense attorneys because he had no reasonable expectation of privacy.  However, this is a matter to be addressed by the District Court.  If Noriega did intend his conversation with his defense attorneys to be confidential, after signing a release, the District Court would be required to ascertain whether this expectation was reasonable.

It is a "bedrock principle that the attorney-client privilege is the client's and his alone.  If the client wishes to waive it, the attorney may not assert it, either for the client's or his own benefit."  United States v. Juarez, 573 F.2d 267, 276 (5th Cir.), cert. denied, 439 U.S. 915 (1978).  Thus, it is also conceivable that the District Court after examining the telephone usage release signed by Noriega, may determine that Noriega did waive his attorney-client privilege as to the recorded

conversations.  If this is the case, the privilege may not be assertable.

United States v. Noriega, 917 F.2d 1543, 1550-51 (11th Cir. 1990)

(footnotes omitted). In addition, in a case involving different circumstances, the U.S. Court of Appeals for the District of Columbia Circuit has explained, with regard to the confidentiality of communications between a client and his attorney:

> We cannot develop a blanket rule prohibiting testimony by a third party who attended a conference between client and attorney.  Such attendance is not necessarily improper - *if consented to by both client and attorney* - and when it exists it precludes application of the rule protecting confidentiality.

U.S. v. Simpson, 475 F.2d 934 (D.C. Cir. 1973) (emphasis added).

Because both Tappen and his attorney consented to the attendance of the sheriff's deputies during the walk-through, they had no reasonable expectation that their communications during the walk-through were protected by the attorney-client privilege.

Based on the foregoing, even assuming Tappen properly exhausted this ground, he has not demonstrated that the state court's ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court

precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Daniel L. Tappen is not entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones for Michael D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on February 23, 2016.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.